1750 37 United States of America v. Adarius Harper oral argument not to exceed 15 minutes per side Mr. Ritz before the plaintiff appellant may I please the court Kevin Ritz for the United States I'd like to reserve two minutes of rebuttal time the court this court previously held that crimes committed recklessly cannot have as an element the use for attempted use of physical force the Supreme Court held otherwise invoicing voicings textual analysis of the word use should apply to the guidelines from a violence context Mr. Harper's aggravated assault conviction should have been counted as a crime of violence this court should vacate and remand for resentencing I'd like to start by focusing on the elements that are common to every reckless aggravated assault in the state of Tennessee if you don't mind let me just can you just remind me again what are the specific words that we're interpreting in this case and what were they in voicing your honor in voicing the definition was misdemeanor crime of domestic violence use or attempted use of physical force and it did not have the against another against the person of another use or attempted use of physical force correct your honor okay and here just it's been a couple weeks of course your honor it's the same except it has the extra phrase against the person of another actually the same except against a person I believe in the crime of violence guidelines crime of violence situation there's also the threatened use which is also an addition okay but the use of physical force language is basically the same for and we would say meaningfully in every way the same okay so in in your definition of the use or attempted use is your argument that that wouldn't imply some kind of intentional act you say that that that would that would include or subsume recklessness yes your honor that's our argument and voicing tells us that that's the answer well voicing doesn't tell us it's the answer in every case does it know your honor okay so that raises the question of what does voicing tell us if anything about mr. Harper's case and the reason I asked that is that voicing seems very tied to the particular statutory scheme that is to me relatively if not almost completely bereft of analysis about how the court is supposed to go about analysis in a situation that might not be perfectly analogous to the one in voicing we see it differently your honor and I'd like to explain why in 2a section 2a of the voicing opinion there is a textual analysis of what the word use means all it and that's what the opinion says twice says the only word we're examining is the word use all of the examples provided the plate throwing the door slamming the diction of the sources of law the dictionaries the case law none of those things had anything to do with the domestic violence context there is another section of the of the of that section section 2b discusses the statutory background the purpose of 922 g9 but it says it tells us that statutory text and background alike in other words these are independent bases for the court's conclusion and holding in voicing and alike not together or jointly but alike and it says so too so in addition to this text textual analysis which was not think for everybody we think there's more than enough for us here and we have more than enough about what I meant but go ahead more that more than enough of a leg to question as a when you get down to it it's is recklessness closer to the knowing end of the spectrum or the accidental end of the spectrum and that if we if we take your argument we agree with that doesn't that set up such a broad screen as a broad scheme that you would automatically sweep in actions and activities that would lead to an absurd it's not comical result no your honor we see it because we actually would look at it the other way that aggravated assaults to exclude that from a crime of violence enhancement and a sentencing enhancement for having a prior crime of violence would actually be much more comical absurd than then then including that I'm certain than the opposite result and and the reason again is because recklessness recklessness involves and this is what voicing tells us a volitional act plus some sort of knowledge that that injury will occur so again just like that may occur correct the only difference between knowing conduct and reckless conduct voicing tells us is the degree of risk that that injury would occur in knowing conduct there's a practical certainty and in reckless conduct it's it's being aware of but disregarding consciously that substantial and unjustifiable risk and what we see is is that's the spectrum dating back to the Supreme Court's decision in leo call you have the knowing conduct the example used in leo call was pushing someone and you have accidental conduct stumbling and falling into someone and leo call tells us accidental conduct is not going to get us there but leo call also told us we're not going to deal with recklessness today this court a couple years after leo call in Portela considered the quote considered dicta of leo call and said we don't think recklessness qualifies McMurray which dealt with this statute that we're dealing with today relied squarely and solely I should say on Portela and leo call and said that reckless conduct is excluded what we believe voicing tells us is that this court took the wrong path right and and took a wrong turn at Portela and voicing now provides us this road map a textual analysis of the same word in the very same phrase that that gives us these examples of play throwing door slamming these are volitional acts that involve the conscious disregard of a substantial risk and again reckless aggravated assaults in the state of Tennessee every one of those crimes involves a bodily injury every one of those crimes in every one of those crimes the injury is either serious or there is a deadly weapon involved and in every one of those crimes the person has consciously disregard is aware of and consciously disregards this risk of deliberate decision to endanger another that's what's happening in a reckless aggravated assault you are making a deliberate decision to endanger another and I get a little lost in the careful analysis I mean it there are there too strong what reasons you should prevail two other circuits have essentially agreed with the government's position and common sense I mean although I was in the majority common sense might dictate that the sort of assault that's there is not in fact one that should not be categorized as a crime of violence but it's sort of it get after that it gets really hard we don't disagree your common sense would lead us with would lead one to say someone who had no exposure blissfully to any of these the sentencing enhancement litigation and came to it as a matter of first impression and thought should aggravated assault qualifies a crime of violence will surely it should right and even recklessness applies that someone was doing something that might well cause another individual harm precisely it is not accidental conduct and it is taking a deliberate act volitional act of deliberate decision to endanger another just like Mr. Harper did in his predicate reckless aggravated assault and we use the example not just a Mr. Harper's conviction but the other state convictions that are state cases that we included in our brief just to illustrate kind of what we what it is we're talking about and this is not just givens it may be hard to a degree but if we were to kind of ask ourselves perhaps some of this jurisprudence has gone down the path of what there's a faulty GPS involved like Justice Alito talked about in his dissent in Mathis and we've kind of gotten way off base as to what Congress and the Sentencing Commission could have intended with these crime of violence or violent felony enhancements this one we would submit it's actually not that hard because we have the ability to rely on a faulty GPS we have a road map you're looking at is one that seems to rely pretty heavily on the particular statutory scheme in that case right and the road and at the end or wherever it is in the opinion the court takes pains to tell us it's not deciding the overall question and it doesn't I part of the opinion if I'm recalling correctly gives us any hint as to what the proper road map is I think that's fair your honor it does not tell us what the answer is but if that's a we would characterize that as a routine act by the Supreme Court I don't mean to interrupt you but I'm about to shut up so let you finish arguing what are we to do with the fact that we should probably be overruling our prior precedent as a panel only if it's clear that the Supreme Court case is inconsistent with our final decision what with our prior decision what if it's just murky we think it's well I think if it if it if it is just murky then it's tougher for us to to get you to move that boulder over the hill it's not murky in our in our view right and in our view this is if we study the section 2a of this opinion which is an independent basis for the holding invoicing if you look at it closely one looks at it closely and it's all discussion about what a reckless assault is and there is no good reason not to apply that to this context I mean these are similar phrases doing similar things promoting public safety deterring illegal firearm possession and of course with when you get to a sentencing enhancement you're providing for a higher sentence for those who have engaged in this conduct before and then possessed a firearm later that's what they're for yes and and there is no again persuasive reason not to apply what the voicing reasoning in this context the footnote invoicing that says we're not going to decide this I should note only actually mentions 16 section 16 does not actually mention the guidelines crime of violence or the armed career criminal act at all and there may in fact be some daylight between section 16 and what we're talking about today section 16 includes the property of another as well as you know just the person of physical force against the person of another that's obviously not what we have to deal with today we're dealing with a guidelines crime of violence definition that is identical and pretty much every meaningful way the last thing I do want to say is when judge Kethledge asked about the statutory text and the difference the fact that there is no against clause and the misdemeanor crime of domestic statute is a little bit of a red herring the misdemeanor crime of domestic violence statute is obviously talking about force being used quote against someone voicing uses the word against over and over in its opinion there's a victim that is a domestic relation in that statute obviously so you're obviously using it's implicit in the statute that this force is not just being used in the in the world somewhere it's being used against this domestic relation so it's it's basically the same phrase we've learned what physical force means and here in voicing we have learned that mens rea is indifferent to reckless intentional or knowing that that reasoning should apply here excuse me you're now miss German Robinson I see I can be whoever you want me to be judge Mary Kay German Robinson old habits die hard I also have never sat on this side in the Court of Appeals argument and I never have had to walk back and get these little different for me today and I stand you're representing a Darius Harper I represented during the sentencing hearing about going to trial we did not and when the district court judge asked me why should I rule in your favor I said there's binding precedent that precedent of course is you were part of that majority just givens and I'm a little puzzled with the government's argument I understand use means use that part I get but we are here on a reckless aggravated assault it's a guideline enhancement as opposed to a 922 G case a g9 case which is actually watching fell after Castleman Castleman basically said that a aggravated assault is a misdemeanor crime of violence and in the Castleman argument for the government in their brief actually they argued that there's a very different purpose for in context involved here in Castleman and there would be for armed career criminal act would be for I guess for guidelines for my purpose and that's that we're talking about domestic violence abusers in 922 G but I mean the court the Supreme Court's textual analysis in Blaseen by its terms is an independent basis of the court's decision the rest is arguably dicta I section by saying in some there's no exclusion from this language based on reckless behavior person who assaults another recklessly quote uses force no less than one who carries out that same action knowingly or intentionally so if the word use really is the linchpin here of whether the enhancement was properly applied it's hard to see how we are not bound by the court's construction of that very word in in a linguistic context that is awfully hard to distinguish from the one in Blaseen linguistically but perhaps not legally when we're talking about a separate statute I mean the statute that they were specifically looking at really was a definition statute that's 921 18 you see 921 I think it's a 33 a and that that provides that definitional and the word used within that definition but they were specifically talking about the threat of a domestic violence abuser and and what's different I mean that does go to the purpose business yes it's a separate hermetically sealed part of the the court has told us what use means you could argue with the court's interpretation I mean to say that one uses force if they engage in an act of employing it you know it's not a slam-dunk it's sort of you know just a ordinary understanding interpretation but you know we we kind of have that here and if we we disregard it then you know potentially we're gonna warrant reversal from the Supreme Court for not following you know they're pretty straightforward description of what use means using it in a textual and I guess right dictionary type no no I mean I wouldn't put it in sort of a narrow pejorative not that you're trying to be pejorative it's about you know ordinary understanding of English and Justice Kagan says this is the the ordinary understanding of use and and that's like full stop the guy loses as a result of that in the case except for sometimes words have different meanings even in Castleman the use violent force meant something entirely different when we were talking about what a domestic violence context as opposed to say in an armed career criminal act context so sometimes violent force would mean something different and does mean something different really based on the fact that most domestic abusers are prosecuted under misdemeanor statutes and those come from common law so the different I mean what I have to two questions for you I mean what about the context here changes the meaning of use from what she says it means in that first section and then the other thing is the very case that our court relied on Leocal she just completely vaporizes for this purpose I mean she says contrary to petitioners view nothing in Leocal suggests a different conclusion ie that use marks a dividing line between reckless and knowing conduct I mean that that is exactly the opposite of what our court said about that case in whatever you know Murray or whatever that's the strongest argument that the government has but I do think we are talking about going back to context and purpose becoming more important because we're not operating in a vacuum we're operating are we going to enhance in an individual for a sentence or are we trying to keep guns out of the house out of the hands of domestic abusers in who are different necessarily than maybe just a felon that can't possess a gun because a domestic abuser will go home I mean so as to what the word use means you would say it's not clear that use in this context means only you know knowing or intentional I would say I would go back to the murky word it is clear that it means no sorry I think they were very clear about what they said about Leocal and that is the strongest argument for the government but I also think they did not come forward and say okay for guideline analysis for ACCA analysis these are all the same in fact the analysis in Castleman and even the analysis in Voisin although the textual analysis is what you say it is we were talking about and I didn't want to come here and talk about a lot of cliches I mean I don't I don't care for romantic comedies I don't you know or even Sammy Hagar lyrics but we are talking about apples and oranges here we're talking about two different things and I think what judge Gibbons had to say and what judge Donald and say also is that it seemed that this analysis was tailored specifically to that statute to do that statutory analysis and I think it's extremely important to say what you already know is that had this been when 922 G was promulgated based on it's a statutes before them 30 I think 35 jurisdictions would have no effect at all so we would say well 35 jurisdictions we're not interested in domestic abuser coming home with a gun so in that sense we do end up with something that's I don't want to say comical but something that doesn't make any sense and sometimes we have to go and does it make sense yes there's a textual analysis yes there's a technical analysis and then what is it that the Congress was trying to do with 922 g9 and then with the definitional section to 921 a 33 a and and I 100% understand why mr. Ritz would bring this and he's an asset to his office he's a good lawyer but in this situation when judge folks made a decision and when I advised my client well you know there's this case out there but it's apples and oranges I think we we didn't do that recklessly ourselves I think we did that intentionally to explain to them where let's say the law was at the time and I do not think when we have the apples which is a domestic violence situation and whether or not we should take the home as opposed to a felon and then we apply that to oranges which is an enhancement based on either the Armed Career Criminal Act but with with my case with the guidelines you would do end up with absurd results of someone driving down the street I guess the car can be your your dangerous weapon driving down the street a little too fast it's that person going to be get 15 to life does that make any sense I know you've already talked about that but but just for the sake of clarity and and focus could you again address why was ain't should not be should not extend beyond the domestic violence context because you're arguing that there is a that there's a difference and I understand your argument about people don't want people domestic violence abuses to come home with a gun but the court has used some pretty strong language in the case so what is your best argument for why it should not be extended beyond domestic violence given that these other courts in fact have said that it's not just cabined to domestic violence offenses and sometimes clarity is in my strength your honor because I'll try to be clear I think I'll go to think it's Howell's in the Fifth Circuit and in looking and they I'm asking you to join with one in Bennett and not with Howell not with you'll notice the statute there that they were analyzing required that the victim be be a relative I think it was like a family domestic strangulation something very horrible sounding but I guess reckless was part of the statute but it did again involved a domestic violence type of crime which I think makes it a little different than what we're talking about here just a reckless aggravated assault under Tennessee law and then you're I mean to be specific look at your client didn't he shoot his brother in the leg or maybe that was mr. McMurray no it's just mr. Harper of course we can't look at the facts right well I mean if you're gonna get down to one family member and very similar conduct I mean I'm actually getting to the statute itself and the part of the statute that they say that mr. Howell had violated as opposed to what the facts are and and believe me I've been hit and struck many times from the bench by but also it does distinguish this from basically a felon versus a domestic violence situation and then in the Eighth Circuit that's I believe that's fog is that case and in that case there was what the Eighth Circuit or what I'm sorry the district court had done is they've done they modified categorical approach and then found through the plea colloquy that that individual defendant had actually admitted to intentionally shooting someone so I think we take those kind of out-of-the-box situations and that creates I guess what the circuit split is as opposed to I guess circuit one in Bennett or did in that in the Bennett case although I know mr. Ritz is going to say oh they're talking about the rule of lenity and that's what was based on but there was a very careful analysis about what the distinction in the statutes were distinction I guess between domestic violence statute 922 g9 and then whether or not there are enhancements or penalties well actually Bennett talked about Castleman so so yes that's the case you're talking about yes that's the First Circuit Bennett oh okay and and also the Sixth Circuit also has addressed this maybe not directly but I think it's fairly close in point on the in the Glover case and the Glover case again said there was nothing in Voisin that or Voisin or Castleman that should change the way we look at reckless crimes anyway that's an unpublished opinion Glover is in the brief you referred to a First Circuit case I wasn't I didn't quite get that context but is there now also a First Circuit case that has concluded that the government's position is correct actually no it concluded that my position is oh okay so we have a split already didn't publish it it's actually been published and I believe that mr. Ritz in his 29 letter did I think I didn't see I can hand you a copy if that no no I can get a copy too I just didn't have it today but the good Lord that he is he did let us know that they're there thank God I'm not creating a circuit split at this point although you know that would somebody's gonna get their work reviewed here is absolutely true and your honors I am asking you to affirm the district court and to stick by the precedent that's before you and if there's any other questions that I can answer I'd be happy to do that your honor I just make two quick points first about the other circuits it is correct to two and a half weeks ago the First Circuit came out with a decision that we actually don't think squarely addresses this if it's sort of is fair and and what happens is they basically they go through both sets of the arguments and they kind of throw up their hands at the end of it and say well we're not really sure so the rule of lenity applies and it rules for the defendant sure and there was I do want to make apparently at the end of last week the 8th Circuit issued another decision called fields which maybe cabined its previous decision that goes our way the fog decision this is  with we can obviously see that at the district court level we do think it's meaningful that two circuits have have gone our way and published opinions since voisine and we also think I think the second thing I wanted to say is back to McMurray McMurray it'd be one thing if McMurray had other kind of legs that it was standing on other than leo call when you get down to it McMurray is standing only on leo call and says you know what we're gonna look in Portela which well it's standing I mean an important part of the McMurray analysis factual analysis was that mr. McMurray had entered an offer plea and that entered factored into it in several different ways I mean but not not the overall legal principle but the fair your honor I think at the end of the day we're not it's a categorical approach here too right I mean we only raised the brother as an illustration of what what's happening in these aggravated assaults but when you take away leo call and we believe that basically the opinion of voisine does eviscerate that reasoning it this was a gap it was a gap filling exercise of McMurray court has told us that the Supreme Court has told us that we've filled the gap with the wrong rule the court should vacate and remand well we thank you both for your arguments I don't know that we're happy to welcome the discussion but it seems like we're going to be required to and I can't recall what district it's from but I have another of these tomorrow so there's more than one percolating in our court at this point so thank you we'll consider the case carefully